IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-129

No. 91A21

Filed 5 November 2021

IN THE MATTER OF: A.A.M.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered 3 December 2020 by Judge Mark L. Killian in District Court, Burke County. This matter was calendared for argument in the Supreme Court on 30 September 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Amanda C. Perez for petitioner-appellee Burke County Department of Social Services.*

*Morgan Renee Thomas, Heather Williams Forshey, and Katelyn Bailey Heath, for respondent-appellee Guardian ad Litem.*

*Parent Defender Wendy C. Sotolongo, by Deputy Parent Defender Annick Lenoir-Peek, for respondent-appellant father.*

BERGER, Justice.

¶ 1     Respondent appeals from the trial court's order terminating his parental rights in A.A.M. (Aiden)[1] based on dependency and willful abandonment.[2] We affirm.

## I.     Background

---

[1] A pseudonym is used throughout the opinion to protect the child's identity and for ease of reading.

[2] The trial court's order also terminated the parental rights of Aiden's mother, who is not a party to this appeal.

On August 20, 2018, Burke County Department of Social Services (DSS) filed a juvenile petition alleging that Aiden was a neglected and dependent juvenile. The petition alleged that Aiden's mother tested positive for fentanyl and amphetamines at the time of Aiden's birth in August 2018, and Aiden also tested positive for amphetamines and methamphetamines. The trial court entered a nonsecure custody order authorizing DSS to place Aiden in a licensed foster home or a facility operated by DSS. On August 23, 2018, the trial court appointed a guardian ad litem for Aiden.

Aiden was adjudicated a dependent and neglected juvenile in a December 20, 2018 order. The trial court ordered DSS to maintain custody of Aiden and arrange for his placement or foster care. Paternity for Aiden had not been established at the time of the review hearing. The mother had named six potential fathers. By order entered February 4, 2019, the court precluded visitation between the juvenile and any putative father until DNA testing confirmed paternity.

A permanency planning hearing was conducted on March 14, 2019, and the trial court set the primary permanent plan as reunification (with mother) and the secondary plan as adoption.

Subsequent DNA testing established that respondent was Aiden's biological father, and respondent was added as a party to the action. At a May 9, 2019 permanency planning hearing, the court found that respondent had an extensive criminal history and was in custody under an $85,000.00 bond. The court ordered

that respondent have no visitation with Aiden until respondent entered into a case plan with DSS and was released from custody. Respondent would be allowed one hour of supervised visitation per month if he met these requirements.

¶ 6 The trial court entered a permanency planning order on August 29, 2019 in which it found that respondent had yet to enter a case plan and was not actively participating with DSS or the guardian ad litem. Additionally, respondent was not paying child support. Respondent was still in custody under an $85,000.00 bond at the time, and the trial court found that respondent was "acting in a manner inconsistent with the health and safety of the [juvenile]." The court further determined that adoption may be an appropriate plan if reunification could not occur within six months.

¶ 7 The trial court entered another permanency planning order on December 20, 2019 in which it found respondent had not entered a case plan with DSS; remained incarcerated with an expected release date of June 16, 2021; was not making progress toward reunification within a reasonable period of time; and was not actively participating with a case plan, DSS, or the guardian ad litem. The court changed the primary permanent plan to adoption with a secondary plan of reunification. Respondent was ordered to comply with the following:

a. Complete a substance abuse assessment and complete all recommendations;
b. Submit to random urine and hair follicle drug screens as requested by [DSS] no later than 4:00pm on the date

requested.

c. Complete parenting classes and demonstrate the skills he has learned;
d. Obtain and maintain a legal means of income;
e. Maintain contact with [DSS];
f. Sign appropriate releases of information for all service providers so [DSS] can monitor [his] compliance with services;
g. Obtain and maintain stable housing;
h. Refrain from engaging in criminal activity.

¶ 8        In another permanency planning order entered on August 14, 2020, the court found that respondent had still not entered a case plan with DSS. Moreover, respondent remained incarcerated, but his expected release date had changed to January 27, 2021. As to potential placements for Aiden, DSS excluded some of the individuals provided by respondent because they were not biological relatives and excluded others based on criminal history, physical inability, and living circumstances. The remaining potential placements either did not respond to communications from DSS, or DSS had not found contact information for the potential placement. The court found that respondent was "minimally" available to the Court, DSS, and the guardian ad litem.

¶ 9        On July 29, 2020, DSS filed a motion to terminate respondent's parental rights.[3] DSS alleged that grounds existed to terminate his parental rights for

---

[3] The motion to terminate parental rights included the termination of the mother's parental rights in Aiden. Respondent-mother's parental rights were subsequently terminated, and she did not appeal.

willfully leaving the juvenile in foster care for more than twelve months, dependency, and willful abandonment.

¶ 10 On August 10, 2020, respondent responded to the motion to terminate his parental rights by contending he did not receive a case plan from DSS until July 2020, despite requesting a plan "since day one." Respondent also noted his unsuccessful efforts in providing a suitable placement for Aiden and stated that his fiancée could act as a guardian to provide stable housing and finances for Aiden.

¶ 11 A hearing on the motion to terminate parental rights began on September 25, 2020. The trial court terminated respondent's parental rights in an order entered December 3, 2020, pursuant to N.C.G.S. § 1111(a)(6) and (7), and concluded that it was in Aiden's best interests that respondent's parental rights be terminated.

¶ 12 The trial court made the following findings of fact related to willful abandonment:

> 128. The foster parents of the juvenile set up a post office box so that the respondent father could send mail to the juvenile. The foster father also gave the respondent father his personal cell phone number so that he could call and keep in touch with the foster parents and the juvenile.
>
> 129. The respondent father did not send cards, gifts or letters for the juvenile in the six months prior to the Department filing the motion for termination of parental rights either to the Department or to the foster parents.
>
> 130. The respondent father did not call to check on the

status of the juvenile or inquire about his health, safety, or welfare in the six months in the six months [sic] prior to the Department filing the motion for termination of parental rights either to the Department or the foster parents. The respondent father testified that he has access to a phone in prison and that his access to that phone has not be[en] curtailed by the COVID-19 pandemic.

131.  The respondent father has never met or acted as a parent to the juvenile.

132.  The respondent father has never made a bond with the juvenile.

133.  The respondent father has never provided a safe home for the juvenile.

134.  The respondent father has never contributed financially to the juvenile. [Respondent-father] has a job in prison wherein he earns $0.70 per day.

135.  The respondent father has withheld his love and affection from the juvenile.

136.  The court received evidence in the form of copies of receipts for items that were supposedly purchased by [respondent-father's fiancée] for the juvenile's second birthday.

137.  [Respondent-father's fiancée] testified that any efforts she made were voluntary and that [respondent-father] did not ask her to do it.

138.  The respondent father is aware that the juvenile is in the custody of the Burke County Department of Social Services.

. . . .

140.   The failure of the respondent father to send cards, gifts or letters, financially support the juvenile or maintain a parental bond with the juvenile within six months next preceding the filing of the juvenile motion demonstrates conduct which is wholly inconsistent with a desire to maintain custody of the juvenile.

. . . .

145.   Pursuant to N.C.G.S. § 7B-1111(a)(7) the respondent father has willfully abandoned the juvenile for a continuous period of six months preceding the filing of the motion.

Respondent appeals, arguing findings of fact 128, 129, 130, 135, 140, and 145 are not supported by the evidence.  Further, respondent contends the trial court erred in concluding that grounds existed to terminate his parental rights based on dependency, pursuant to N.C.G.S. § 7B-1111(a)(6), and willful abandonment, pursuant to N.C.G.S. § 7B-1111(a)(7).

## II.   Analysis

Our Juvenile Code provides a two-stage process for terminating parental rights: an adjudicatory stage followed by a dispositional stage.  *See* N.C.G.S. § 7B-1109, -1110 (2019).  During the adjudicatory stage, the burden is on the petitioner to establish the existence of any ground for termination alleged under N.C.G.S. § 7B-1111(a) based on clear, cogent, and convincing evidence.  N.C.G.S. § 7B-1109(e)–(f) (2019).  "A trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that

would support a contrary finding." *In re B.O.A.*, 372 N.C. 372, 379, 831 S.E.2d 305, 310 (2019) (citing *In re Moore*, 306 N.C. 394, 403–04, 293 S.E.2d 127, 132 (1982)).

¶ 15 "Unchallenged findings are deemed to be supported by the evidence and are 'binding on appeal.' " *In re K.N.K.*, 374 N.C. 50, 53, 839 S.E.2d 735, 738 (2020) (quoting *In re Z.L.W.*, 372 N.C. 432, 437, 831 S.E.2d 62, 65 (2019)). "Moreover, we review only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *In re Z.O.G.-I.*, 375 N.C. 858, 861, 851 S.E.2d 298, 301 (2020) (quoting *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58–59 (2019)). "[W]hether a trial court's findings of fact support its conclusions of law is reviewed de novo." *In re J.S.*, 374 N.C. 811, 814–15, 845 S.E.2d 66, 71 (2020) (citing *State v. Nicholson*, 371 N.C. 284, 288, 813 S.E.2d 840, 843 (2018)).

¶ 16 Pursuant to N.C.G.S. § 7B-1111(a)(7), a trial court may terminate parental rights upon a finding that "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]" N.C.G.S. § 7B-1111(a)(7). "[A]bandonment imports any willful or intentional conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962). "Willful intent is an integral part of abandonment and this is a question of fact to be determined from the evidence." *Id.* at 501, 126 S.E.2d at 608.

¶ 17    "If a parent withholds that parent's presence, love, care, the opportunity to display filial affection, and willfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *In re C.B.C.*, 373 N.C. 16, 19, 832 S.E.2d 692, 695 (2019) (cleaned up) (quoting *Pratt*, 257 N.C. at 501, 126 S.E.2d at 608).   To support this ground for termination, "the trial court must make findings of fact that show that the parent had a 'purposeful, deliberative and manifest willful determination to forego all parental duties and relinquish all parental claims to [the child][.]' " *In re A.G.D.*, 374 N.C. 317, 319, 841 S.E.2d 238, 240 (2020) (quoting *In re N.D.A.*, 373 N.C. 71, 79, 833 S.E.2d 768, 774 (2019)).

¶ 18    "[T]he 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition."  *See In re D.M.O.*, 250 N.C. App. 570, 573, 794 S.E.2d 858, 861 (2016) (citing *In re Young*, 346 N.C. 244, 251, 485 S.E.2d 612, 617 (1997)).  DSS filed its motion to terminate respondent's parental rights on July 29, 2020.  Thus, the determinative six-month period was from January 29, 2020, through July 29, 2020.

## A.  Finding of Fact 128

¶ 19    The record includes testimony from Aiden's foster parent that the foster parents obtained a post office box to allow respondent to communicate with Aiden by mail and that Aiden's foster father provided his cell phone number to respondent as well.  Respondent testified that the foster parents opened a post office box, provided

him with the address, and provided him with their contact information. Thus, finding of fact 128 is supported by the record evidence and is conclusive on appeal.

**B. Finding of Fact 129**

¶ 20        Aiden's foster parent testified that after receiving a Christmas card from respondent in December 2019, the foster family did not receive any additional correspondence or gifts from respondent. Moreover, respondent's fiancé testified that when she bought clothes, shoes, toys, and snacks for Aiden, she did it voluntarily and that respondent had not asked her to. As such, finding of fact 129 is supported by the record evidence and is conclusive on appeal.

**C. Finding of Fact 130**

¶ 21        Respondent specifically contends that during the adjudicatory hearing, the DSS social worker assigned to Aiden's case changed her testimony related to contact by respondent with DSS during the determinative six-month period. Respondent also asks this Court to compare the statements of Aiden's foster parent summarized in a DSS report against the foster parent's testimony before the trial court.

¶ 22        We note that "[i]f different inferences may be drawn from the evidence, [the trial judge] determines which inferences shall be drawn and which shall be rejected." *See Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968). Furthermore, a review of the record reveals that the social worker's testimony was not inconsistent or "modified."

¶ 23 The social worker assigned to respondent's case in 2019 testified that prior to the determinative six-month period, respondent called her about Aiden "periodically." Then, from January through April 2020, another social worker handled Aiden's case. The initial social worker testified that DSS records did not reflect contact between respondent and the second social worker during the January through April 2020 period. Moreover, after the initial social worker resumed working on Aiden's case in April 2020, respondent did not contact her prior to July 29, 2020. Thus, the testimony was that prior to the determinative period, respondent had periodic contact with DSS, but that from January through July 29, 2020, respondent had no contact with DSS. Thus, the social worker's testimony was not inconsistent.

¶ 24 Respondent also asks this Court's to compare statements made by a foster parent in April 2020 against testimony the foster parent gave during the termination hearing. Respondent seeks to show that his last communication with the foster family occurred during the determinative six-month period, rather than on January 15, 2020, as testified to by the foster parent at trial. Respondent argues "[i]t is more likely that their earlier testimony is more accurate."

¶ 25 However, this Court has previously noted that

> an important aspect of the trial court's role as finder of fact is assessing the demeanor and credibility of witnesses, often in light of inconsistencies or contradictory evidence. It is in part because the trial court is uniquely situated to make this credibility determination that appellate courts may not reweigh the underlying evidence presented at

trial.

*In re A.J.T.*, 374 N.C. 504, 510, 843 S.E.2d 192, 196 (2020) (quoting *In re J.A.M.*, 372 N.C. 1, 11, 822 S.E.2d 693, 700 (2019)). Through the testimony of the social worker and foster parent, the record supports finding of fact 130, even if the trial court may have made a contrary finding. *See In re B.O.A.*, 372 N.C. at 379, 831 S.E.2d at 310. As such, finding of fact 130 is conclusive on appeal.

**D. Findings of Fact 135, 140, and 145**

Regarding findings of fact 135, 140, and 145—that "respondent father has withheld his love and affection from the juvenile"; his actions demonstrate "conduct which is wholly inconsistent with a desire to maintain custody of the juvenile"; and that respondent has willfully abandoned the juvenile—the trial court addressed mixed questions of law and fact.

Respondent further argues that the evidence before the court showed that he did not abandon Aiden. He contends that while incarcerated his contacts were "limited" but that he began making phone calls to Aiden's foster parents in October 2019 and had an in-person meeting in November 2019 with the foster parents while at a hearing. Respondent testified to having regular access to a telephone every day during the determinative period from 7:00 a.m. to 11:00 p.m. Moreover, respondent's fiancée testified to speaking with respondent every day in the year preceding the trial.

¶ 28        As reflected in the testimony of Aiden's foster parent, the foster family received a letter and a card from respondent in December 2019, and he spoke with the foster parents during four telephone calls prior to January 16, 2020. During a call on January 15, 2020, respondent acknowledged to the foster parents that there was a "very real possibility" that Aiden would be placed for adoption, and he asked to maintain a relationship with Aiden should the foster parents adopt him. When the foster parents indicated they could not guarantee continued contact with Aiden and that the type of contact respondent would be allowed would be based on respondent's post-release actions, respondent "hung up." Respondent did not communicate again with the foster parents via phone or Aiden via card or letter prior to the filing of the motion to terminate his parental rights. While the evidence suggests that respondent called the foster family one time "several weeks" after January 15, 2020, no one was able to answer or return the call as respondent did not leave a message.

¶ 29        Respondent contends that the gifts provided to Aiden by his fiancée are evidence that he did not willfully abandon the juvenile. However, respondent did not ask her to send Aiden cards and gifts, and his fiancée testified she did it of her own volition. The evidence discussed above is contained in the record and supports findings of fact 135, 140, and 145. Thus, such findings are conclusive on appeal.

¶ 30        Respondent also directs our attention to a Certificate of Achievement he received for successful completion of a "Nurturing Father's Program" filed with the

Burke County Clerk of Court's Office on July 2, 2020. Yet respondent fails to direct our attention to any evidence or finding which suggests he applied the skills learned in the Nurturing Father's Program in developing a relationship with Aiden or that such a relationship exists at all.

¶ 31 While the trial court may consider respondent's efforts outside of the determinative six-month period, those actions do not preclude a finding that respondent willfully abandoned the juvenile when he did nothing to maintain or establish a relationship with Aiden during the determinative six-month period. *In re C.B.C.*, 373 N.C. 16, 23, 832 S.E.2d 692, 697 (2019) (citing *In re B.S.O.*, 234 N.C. App. 706, 713 n.4, 760 S.E.2d 59, 65 n.4 (2014)).

¶ 32 As the challenged findings of fact are supported by clear, cogent, and convincing evidence they are conclusive on appeal. Additionally, the remaining unchallenged findings of fact are binding on appeal. *See In re K.N.K.*, 374 N.C. at 53, 839 S.E.2d at 738; *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal."). We now turn to whether such findings support the trial court's conclusion that respondent abandoned Aiden and the termination of his parental rights was warranted.

The trial court's findings demonstrate that during the determinative six-month period, respondent was aware Aiden was in DSS custody, had the ability to communicate by telephone, and had the contact information for the foster family with whom Aiden was placed. Despite this, respondent failed to check on Aiden's health, safety, welfare, condition, or status, and failed to provide any financial support. Respondent also did not send cards, gifts, or letters, and the gifts given to Aiden by respondent's fiancée were not at the direction of respondent. Thus, respondent never acted as a parent to the juvenile and has never cultivated a bond with him. Therefore, the findings of fact support the trial court's determination that grounds existed to terminate respondent's parental rights in Aiden pursuant to N.C.G.S. § 7B-1111(a)(7).

Because the existence of only one ground under N.C.G.S. § 7B-1111 is required to support a termination of parental rights, *see* N.C.G.S. § 7B-1111(a), we need not address respondent's argument as to N.C.G.S. § 7B-1111(a)(6). Respondent does not challenge the trial court's determination that termination of his parental rights was in Aiden's best interests. *See* N.C.G.S. § 7B-1110(a) (2019). Accordingly, we affirm the court's order terminating respondent's parental rights.

AFFIRMED.