IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-736

Filed 01 August 2023

Wilkes County, Nos. 21 JT 43-45

IN THE MATTER OF: E.Q.B., M.Q.B., S.R.R.B.

Appeal by Father from order entered 4 May 2022 by Judge William F. Brooks in Wilkes County District Court. Heard in the Court of Appeals 10 May 2023.

*Samantha Belton, pro se, for petitioner-appellee mother.*

*Edward Eldred for respondent-appellant father.*

MURPHY, Judge.

When a parent challenges the trial court's conclusion that he willfully abandoned his children, the determinative period which we consider for this alleged abandonment is the six consecutive months prior to the filing of the petition to terminate parental rights. The obstruction of a parent's ability to contact the children is relevant to the court's consideration; however, the trial court may consider the parent's other actions and inactions in determining the impact of the obstruction on the parent's lack of contact. Here, the trial court's findings of fact support its conclusion that Father willfully abandoned his children, and these findings are supported by clear, cogent, and convincing evidence. Applying our current "single ground" line of jurisprudence, we need not address the other grounds for termination disputed by Father.

While we affirm the adjudication and termination of Father's parental rights, the trial court exceeded its authority by including a no-contact provision in its dispositional order that was unsupported by statutory provisions, and we must vacate this portion of the order.

## BACKGROUND

On appeal, Respondent-Father challenges the trial court's adjudicatory order terminating his parental rights of his three minor children—E.Q.B. ("Dean"), M.Q.B. ("Barry"), and S.R.R.B. ("Allison")—and the trial court's dispositional order prohibiting Father from contacting his children.[1]  In August 2007, Father married Petitioner-Mother.  While the parents lived in Georgia, they had two children: Dean in 2008 and Barry in 2010.  At some time after Barry's birth in 2010, Father was incarcerated, and in 2013, during his incarceration, Mother and Father divorced. After Father's release in 2015, the parents reconciled for a brief period, and Mother became pregnant with the parents' third child.  During this period of reconciliation, the children would tell Mother that Father abused them when he was alone with them.  After one incident, Mother took Dean to the hospital because he told her, "[D]addy kicked me in my back."  Dean was treated for constipation after the kick. During another incident, Father tied up Mother's son, who was conceived with another man, with a belt. This caused that son pain and put him in fear.

---

[1] We use pseudonyms to protect the juveniles' identities and for ease of reading.

When Father returned to prison in late 2016, the parents again separated. After this separation, Mother moved from Virginia to North Carolina, where she gave birth to the parents' third child, Allison. During Father's incarceration, Mother maintained contact with Father to send him pictures of their children, and in turn, Father sent drawings and cards to the children. However, Mother did not take any of the children to visit him in prison. **{T 17}**

In 2019, some time after Father's release, Mother took the children to visit Father at his aunt's house in Virginia. She had learned from Father's aunt that he would be visiting her before he turned himself in for a probation violation. When Father first met Allison at his aunt's house, she was two years old.

After Father's visit with the children, the children expressed a desire to show their father their new toys and home in Wilkesboro. Mother allowed Father to live in her home with the children from November 2019 until December 2019, and the parents began seeing a pastor for counseling. During this time, Mother paid all of Father's expenses. On or about 1 January 2020, Mother and Father again separated.

After the parents' separation in January 2020, Father called Mother from various numbers to threaten her and the children. During this time, Mother blocked the various numbers which Father used to contact her, until she ultimately changed her phone number. In March, April, and July 2020, "[Father] gave his aunt an unspecified amount of money to send to [Mother] for the children," and in July 2020, he "provided toys to his aunt to send to [Mother] for the children." Aside from these

gifts, the parties dispute whether Father had any actual contact with his children after January 2020. The trial court found that since Mother and Father's separation in January 2020, Father has "made no attempt to see his children and has had no communication with them, even indirectly through his aunt" and, while he gave money and toys to his children through his aunt, he has "made no other efforts to convey messages, other gifts, or any evidence of his love and affection for the children."

From 15 September 2020 until 1 December 2020, Father was incarcerated for a probation violation. Upon his release, Father moved to Arizona "without any attempt to see the children" and was married to another woman on 6 December 2020.

In February 2021, in a separate action "[Mother] sought and obtained a temporary domestic violence protective order against [Father] due to [Father's] threatening to harm [Mother] and/or the children." On 24 March 2021, Mother filed the *Petition to Terminate Parental Rights*, alleging neglect and abandonment. On 19 April 2021, the trial court "issued a Domestic Violence Protective Order [("DVPO")] prohibiting [Father] from having contact with [Mother,]" giving "[Mother] temporary custody of the parties' children[,]" and denying Father from having visitation with the children. The DVPO "did not … prevent [Father] from having contact with the children nor providing gifts, support or other involvement in the children's lives." On 18 April 2022, Judge Robert J. Crumpton extended the DVPO until April 2024.

During the TPR hearing, Father testified that, if his parental rights were not terminated, he would file a custody complaint and sign a voluntary support agreement. On 4 May 2022, the trial court issued the *Order Terminating Parental Rights* and also ordered that "[Father] shall have no further communication or contact with any of [his] children." The trial court found that Allison was too young to express her wishes, but that Father's sons, 12 and 14 at the time, "do not want a relationship with [Father]." The trial court also found that "[Father] has had the means, opportunity, and ability to [file a custody complaint and/or sign a voluntary support agreement] at any time, but has made no effort to do so"; Father did not offer any excuse "for such lack of effort[,] nor has one been revealed by the evidence"; and "[Father] abandoned the children." The trial court concluded that "a ground exists to terminate [Father's] parental rights" pursuant to N.C.G.S. §§ 7B-1111(a)(1) and (a)(7) and N.C.G.S. § 7B-101. Father timely appealed.

## ANALYSIS

Father argues that the trial court erred by finding that clear, cogent, and convincing evidence supported its findings of fact, and that these findings were sufficient to support its termination of his parental rights on three grounds: (1) abandonment, (2) neglect by abandonment, and (3) neglect by failure to provide proper care. Father also argues the trial court exceeded its authority by entering a no-contact order at the conclusion of the TPR hearing.

### A. Termination of Parental Rights

We review the trial court's adjudicatory order to determine "whether the findings are supported by clear, cogent, and convincing evidence and the findings support the conclusions of law, with the trial court's conclusions of law being subject to *de novo* review." *In re N.D.A.*, 373 N.C. 71, 74 (2019), *abrogated in part on other grounds*, *In re G.C.*, 384 N.C. 62 (2023) (italics added) (citations and marks omitted). If we find the trial court's findings of fact are supported by clear, cogent, and convincing evidence and that any of the three grounds on which the trial court terminated Father's parental rights are supported by these findings of fact, we affirm the termination order:

> The issue of whether a trial court's findings of fact support its conclusions of law is reviewed de novo. *See State v. Nicholson*, 371 N.C. 284, 288 (2018). However, an adjudication of any single ground for terminating a parent's rights under N.C.G.S. § 7B-1111(a) will suffice to support a termination order. *In re B.O.A.*, 372 N.C. 372, 380 (2019); *accord In re Moore*, 306 N.C. 394, 404 (1982). Therefore, if this Court upholds the trial court's order in which it concludes that a particular ground for termination exists, then we need not review any remaining grounds. *In re C.J.*, 373 N.C. 260, 263 (2020).

*In re J.S., C.S., D.R.S., D.S.*, 374 N.C. 811, 814-15 (2020) (citations omitted).

**1. Abandonment**

A trial court may terminate a party's parental rights when it finds that the parent "has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]" N.C.G.S. § 7B-1111(a)(7) (2022). To find abandonment, the trial court must find that the parent's conduct

"manifests a willful determination to forego all parental duties and relinquish all parental claims to the child[,]" but the relevant inquiry is limited to the statutory period of six months. *In re C.B.C.*, 373 N.C. 16, 19, 22 (2019) (quoting *In re Young*, 346 N.C. 244, 251 (1997)). Thus, the dates at issue for this ground are 24 September 2020 to 24 March 2021.

On appeal, Father argues that "portions of findings 6, 22, 23, 24, and 26 are not supported by sufficient evidence." These findings read as follows:

> 6. [Mother] and [Father] were married to each other in August, 2007. They divorced in 2013. However, following the divorce, the parties reconciled in 2016 for a brief period during which [Allison] was conceived.
>
> …
>
> 22. Since the time of the parties' divorce in 2013, [Father] has made no effort to provide care for his children. Even when the parties reconciled in 2016 and spent the weeks together in 2019, [Mother] provided all of the financial support for the children.
>
> 23. Since 2013, [Father] has made no effort to provide a safe and loving home for the children.
>
> 24. Since 2013, [Father] has provided no emotional support for the children.
>
> …
>
> 26. For at least the six-month period preceding the filing of the Petition to Terminate Parental Rights, the Court finds that:

(a) [Father] had no communication or contact with the children.

(b) [Father] provided no financial or emotional support for the children.

(c) [Father] provided no cards, gifts, letters, or tokens of affection for the children.

(d) [Father] made no effort to strengthen the parent-child relationship.

(e) [Father] did nothing to be a part of the respective lives of the children, other than sporadic attempts to contact them by some electronic means which he knew, or should have known, would be futile.

(f) [Father] did nothing to demonstrate he had a genuine interest in the welfare and well-being of any of the children.

(g) [Father] abandoned the children.

Father claims "[i]t is not factually accurate to say that [Father] 'made no effort' to provide care and 'provided no emotional support' for the children since 2013." Father claims his "efforts to do both" despite "[Mother] actively [taking] steps to prevent him from doing either beginning in August 2020" render these facts unsupported. Father did not explicitly challenge the trial court's finding in its *Order Terminating Parental Rights* that:

> Since January, 2020 [Father] has made no attempt to see his children and has had no communication with them, even indirectly through his aunt. Although it is apparent that his aunt was able to communicate with [Mother] and children, including being able to send money and toys supplied by [Father], [Father] made no other efforts to

- 8 -

convey messages, other gifts, or any evidence of his love
and affection for the children.

Father also does not explain with particularity which "portions" of the challenged findings were not supported by clear, cogent, and convincing evidence. Nevertheless, all components of the challenged findings of fact are supported by clear, cogent, and convincing evidence. During the TPR hearing, Mother testified that she and Father married in August of 2007, divorced in 2013, and reconciled in 2016, the period during which Allison was conceived. Mother also testified that, during the time when the parties lived together in late 2019, Father only paid for his cigarettes and "snuck … alcohol into [her] house" and that, "going back to 2016," he has not "provided any sort of financial support for the children." The trial court found, and Father does not challenge, that "[Father] has had the means, opportunity, and ability" to "file a Complaint seeking custody of the children and to sign a voluntary support agreement to provide monetary assistance" "at any time, but has made no effort to do so." According to Mother's testimony, the children have lived with her since birth, and when Mother left Father alone with their children in the past, the children would be injured, once to the point of requiring emergency medical attention. Additionally, Mother testified that the parties' children began "questioning themselves" over Father's absence from their lives, and the eldest children expressed to the Guardian *ad Litem* that they "want [Father] to 'stay away from them.'" Consequently, we find that clear, cogent, and convincing evidence supports the trial

court's findings of fact regarding the parties' relationship and Father's failure to provide care, financial support, a safe and loving home, and emotional support for the children.

Father more clearly challenges portions of the findings of fact specifically supporting the trial court's conclusion of abandonment. Father argues that for one and a half of the six consecutive months immediately preceding the filing of the petition or motion, which are reviewed for the purposes of N.C.G.S. § 7B-1111(a)(7) (2022), he was barred from contacting his children by the temporary DVPO which issued in February 2021. In contrast to the April 2021 DVPO, where the trial court explicitly noted the DVPO did not prevent Father from contacting his children through means other than through Mother; from providing financial support for them; or from having involvement in their lives, the trial court did not make a finding as to the terms of the February 2021 temporary order. Furthermore, although the trial court took judicial notice of the entire court file in that action, Father did not submit either DVPO as part of the Record for our review. When referring to the February 2021 DVPO in his brief, Father states, "for one-and-a-half … months, [Mother] had a DVPO preventing [Father] from contacting her." This language suggests that the February DVPO did not prohibit Father from contacting his children; it only prevented him from contacting Mother.

Father's brief argues that the abandonment conclusion was not supported by the facts because Father did "enough." Father notes that, despite the lack of an

explicit trial court finding, both Father and Mother testified that during the six month period, Father "called [Mother] repeatedly and that they spoke once in December 2020." The trial court found "[Mother] has elected to 'block' [Father] from contacting her by telephone … out of fear for herself and the children based upon [Father's] history of abusive behavior." Although Father could not contact the children through Mother, the trial court found that "[Father] … had the means, opportunity, and ability to [file a custody complaint and/or sign a voluntary support agreement] at any time, but has made no effort to do so" and Father did not offer any excuse "for such lack of effort[,] nor has one been revealed by the evidence." Relying on Father's lack of effort to obtain custody, lack of effort to provide financial and emotional support, lack of effort to see his children before he moved to Arizona after his release from incarceration in December 2020, and knowledge that attempting to contact the children through Mother would be futile, the trial court found:

> By his actions and inactions described above, [Father] has elected to be absent from his children's lives … for more than six consecutive months preceding the filing of the Petitions in these cases. [Father] could have, and should have, made other choices to involve himself with the children as their parent. His failure to do so is, and has been, willful and without just cause or excuse.

The trial court's conclusion that Father willfully abandoned his children by demonstrating a "willful determination to forego all parental duties and relinquish all parental claims," *In re C.B.C.*, 373 N.C. at 19 (quoting *In re Young*, 346 N.C. at

251), to the children from September 2020 through March 2021 is supported by the findings of fact.

**2. "Single Ground" Jurisprudence and N.C.G.S. § 7B-1114**

Only one ground is needed to support the termination of Father's parental rights. *In re J.S.*, 374 N.C. at 814-15 ("The issue of whether a trial court's findings of fact support its conclusions of law is reviewed *de novo*. *See State v. Nicholson*, 371 N.C. 284, 288, . . . (2018). However, an adjudication of any single ground for terminating a parent's rights under N.C.G.S. § 7B-1111(a) will suffice to support a termination order. *In re B.O.A.*, 372 N.C. 372, 380, . . . (2019); *accord In re Moore*, 306 N.C. 394, 404, . . . (1982). Therefore, if this Court upholds the trial court's order in which it concludes that a particular ground for termination exists, then we need not review any remaining grounds. *In re C.J.*, 373 N.C. 260, 263, . . . (2020).") As we affirm the trial court's finding of abandonment in accordance with N.C.G.S. § 1111(a)(7), we need not review either of the remaining grounds for the purposes of the termination of parental rights. Although our appellate courts have long held that our inquiry stops once we have affirmed one ground to support the termination of parental rights, *In re B.O.A.*, 372 N.C. at 372, we note that under N.C.G.S. § 7B-1114(g)(2), a discussion of these additional grounds may be a more appropriate exercise of appellate review.

A moot question is "one that would have no practical effect on the controversy." *Emerson v. Cape Fear Country Club, Inc.*, 259 N.C. App. 755, 764 (2018) (citation

omitted). While the "single ground" for termination line of jurisprudence does not appear to explicitly reference our mootness doctrine, a careful reading discloses that we are essentially determining that there is no need to consider the other grounds for termination challenged on appeal, as resolving these issues would have no practical effect on the case. However, whether the trial court's conclusions in regards to each of the other grounds should be affirmed could arguably impact a parent's ability to regain his or her parental rights in the future, pursuant to N.C.G.S. § 7B-1114, effective since 1 October 2011.

In a hearing to reinstate a party's parental rights, the trial court shall consider, *inter alia*, "[w]hether the parent whose rights the motion seeks to have reinstated has remedied the conditions that led to the juvenile's removal and termination of the parent's rights." N.C.G.S. § 7B-1114(g)(2) (2022). The validity of additional ground(s) for termination may very well be relevant to this future statutory procedure and would otherwise escape appellate review. Nevertheless, even if there is a need to reconsider this "single ground" line of jurisprudence in light of N.C.G.S. § 7B-1114(g)(2) and mootness principles, a party bears the responsibility to address mootness "or present us with any collateral consequences that may stem from the disposition order in question." *In re B.B.*, 263 N.C. App. 604, 605 (2019). Father has not argued in this appeal for any renewed consideration of our "single ground" jurisprudence. As such, we need not discuss the merits of the two remaining grounds

for termination, but in an exercise of intellectual honesty we acknowledge the potential for such arguments to impact future appellate litigation.

## B. No-Contact Order

Father argues "[t]he trial court exceeded its authority and abused its discretion by imposing [the] restriction [on Father's ability to communicate with his children.]" Father bases the majority of this argument on an assumption that the trial court issued a no-contact order pursuant to Chapter 50B, despite a lack of statutory authority to do so. N.C.G.S. § 50B-2(a) (2022). There is no indication in the Record that the trial court attempted to issue its no-contact order under Chapter 50B. However, no statutory provisions support the issuance of a no-contact order in this Chapter 7B case. Thus, we agree with Father that the trial court lacked the statutory authority to issue the no-contact order.

## CONCLUSION

The trial court's conclusion that Father abandoned his children pursuant to N.C.G.S. § 7B-1111(a)(7) is supported by findings of fact which are supported by clear, cogent, and convincing evidence. Father makes no arguments related to our "single ground" jurisprudence and we need not address Father's arguments regarding neglect by abandonment or neglect by failure to provide proper care under N.C.G.S. § 7B-1111(a)(1). However, we vacate the no-contact portion of the trial court's order.

AFFIRMED IN PART; VACATED IN PART.

Judges GORE and FLOOD concur.